NATIONAL CASH REGISTER CO. *vs.* J. H. UNDERWOOD.

JULY 3, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. This is an action of trover. The case is before us upon exceptions taken by the defendant at a trial

which took place before a justice of the superior court sitting without a jury and which resulted in a decision for the plaintiff in the sum of $250. The defendant contends that certain testimony was erroneously admitted against his objection; that the decision on the merits is not supported by the evidence and that the damages are excessive.

In January, 1934, the plaintiff sold a National cash register to Thomas L. Moore and Thomas J. Healy on a conditional sale agreement for $262.50. It took back in trade a Remington cash register at an agreed valuation of $83.00 and received $12.50 in cash, leaving an unpaid balance of $167.00. The plaintiff's register was delivered at the Wakefield Diner, in Wakefield, Rhode Island, which was then operated by Moore and Healy. At the time of this transaction the defendant held a chattel mortgage from Moore alone covering all the equipment in the diner, including the Remington register which was given in trade by Moore and Healy to the plaintiff. No payment was made to the plaintiff in February under the conditional sale and a condition of the agreement was thus broken. The breach has continued and the plaintiff has ever since been entitled to the possession of the register. On March 15, 1934, Moore was adjudged a voluntary bankrupt. The plaintiff was not listed as a creditor, but the National register was inventoried and appraised among Moore's assets at the Wakefield Diner. On May 5, 1934, the defendant purchased these assets from the trustee in bankruptcy subject to his mortgage, and on the same day took possession of the premises. Two weeks later the defendant leased the premises to one Whiting, at which time the plaintiff's register was stored in the cellar and another register that the defendant had on hand was brought to the diner for use. The defendant, though informed by the plaintiff that it owned the National register, refused, upon demand by the plaintiff, to surrender that register unless the plaintiff returned to him the Remington register that was originally in the diner and that was included in Moore's chattel mortgage to him.

A writ of replevin issued in behalf of the plaintiff could not be served because the register was stored away in the cellar of the diner and was not found by the officer in charge of the writ. The plaintiff then demanded of the defendant the payment of its claim or the return of the register. The defendant refused to pay the bill and would not surrender the register unless the Remington register was returned to him, whereupon the plaintiff brought this action of trover.

Any claim that the defendant may have, if any, against this plaintiff with reference to the Remington register as a result of the conduct of Moore and Healy is not before us in this case. In any event, it furnished him no legal justification for concealing and refusing to deliver to the plaintiff the register that it had sold to Moore and Healy under the conditional sale agreement. The contention that the plaintiff is estopped to assert its right of possession to the National register, because it failed to assert its claim with the trustee in bankruptcy after it had acquired notice, in an indirect way, of Moore's bankruptcy prior to the sale of the equipment in the diner by the trustee to the defendant, is without merit. The trustee in bankruptcy acquired no greater interest in the register than Moore had and that is all he could convey to a purchaser from him. The defendant was in no way prejudiced by the plaintiff's inaction. We have examined the transcript of the evidence and find no reason to disturb the decision of the trial justice on the issue of liability.

Clifford A. Sweet, a saleman for the plaintiff, was permitted to testify that in May, 1934, the market value of the National register sold to Moore and Healy, which was a demonstrator, was twenty-five percent less than the sale price of $350 for a new machine, or $262.50. He stated that he secured this information from a schedule or price list furnished him by the company and not from a personal knowledge of any such sale; and that "the company sets the price" according to the age of the machine. Albert E. Friend, the plaintiff's manager in this state, testified to the

same effect. Q. "How did you arrive at what a fair market value of this machine was on the first of May?" A. "The National Cash Register Company arrived at that value." Q. "Are you putting the value, fair market value on this machine, your own opinion, or what the Company says?" A. "The National Cash Register Company." Almost at the end of the hearing this witness was allowed to testify from an unidentified copy of a conditional sale contract which was to run for twenty-four months, that a register like the one in suit was sold on April 30, 1934, for $280. This price, he stated, was subject to a five percent reduction for cash, of $266.00. The schedule or price list furnished by the plaintiff to its employees was not produced. The defendant objected to all this testimony and his exceptions thereto are now before us for consideration.

We believe that this testimony was inadmissible, and that the defendant was prejudiced by its reception. The price that a company fixes for its product in a private schedule or price list for the convenience of its salesmen, and which is restricted in its use to them, is not the market value of that commodity at any given time in an open and competitive market. It serves as a guide to the salesmen in marketing the company's product and constitutes at best only an offer to a prospective buyer. Such a schedule of prices stands in an entirely different light from recognized and established commercial reports setting out a printed list of prices at which a class of goods is for sale; for such reports are intended to be consulted by all persons who care to know the price, and from experience they have been found generally reliable. Wigmore on Evidence, Vol. 3, (2nd ed.), §§ 1702, 1704. The testimony of market value admitted in the case at bar was pure hearsay and inadmissible in evidence under any exception to that rule. This being so, the plaintiff is left without any competent evidence in its favor as to the market value of the register in May, 1934.

The defendant, however, produced a witness who testified that he had dealt in cash registers for nearly twenty-six

years, and that he had sold five registers similar to the one in this case in 1934. This witness stated that the market value of the register in May, 1934, was $125.

It is well established that under ordinary circumstances the measure of damages in an action of trover is the value of the property at the time of conversion. This court has also held that if the purchaser under a conditional sale converts the chattel sold to him, the seller may recover in trover damages equal to the unpaid balance of the purchase price, provided the evidence on the question of the market value of the chattel at the time of the conversion equals or exceeds such balance. If such evidence shows that at the time of conversion the market value of the chattel is less than such balance, the measure of damages is the then market value of the chattel. The unpaid balance of the contract price alone is not and cannot be taken as the market value of the chattel. Some proper evidence of what the market value actually was at the time of conversion must be produced. *Woods* v. *Nichols*, 21 R. I. 537; *Pugh Bros. Co.* v. *Marano*, 44 R. I. 1.

Under the circumstances in this case, the trial justice was not justified in fixing the damages at $250. The only evidence of the market value of the register came from the witness for the defendant who fixed the market value of the National register at $125. The defendant's exceptions to the testimony of the witnesses for the plaintiff, Sweet and Friend, on the issue of the market value of the National register in May, 1934, and which the trial justice apparently adopted in his finding on damages, are therefore sustained.

The case is remitted to the superior court for a new trial, unless on or before the tenth day of July, 1936, the plaintiff shall file in said court a remittitur of all of the damages, as fixed by said decision, in excess of $125. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment on the decision as reduced by the remittitur.

*Waldman & Waldman*, for plaintiff.
*James O. Watts*, for defendant.